IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 11 CR 783 |
| vs. | ) | |
| | ) | Jeffrey T. Gilbert |
| MARGARITO LECHUGA | ) | Magistrate Judge |
| aka "Ramon Nevarez-Garcia" | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

THIS CAUSE coming to be heard on November 22 and 30, 2011, upon the Government's oral motion to detain the defendant MARGARITO LECHUGA pursuant to 18 U.S.C. § 3142, and on December 16, 2011, for a continued hearing with respect to issues relating to bond, and the Court having reviewed and considered the evidence and arguments presented at the hearings, therefore, the Court hereby finds as follows:

1. Defendant and two co-defendants are named in a six-count indictment returned on or about November 2, 2011 (the "Indictment"), in which they are charged with knowingly and intentionally possessing 500 grams or more of cocaine with intent to distribute that controlled substance, and with conspiring with each other to do so. Defendant and his co-defendants also are charged with using a telephone to commit the narcotics offenses charged in the Indictment.

2. Because Defendant was indicted and charged with a crime under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, for which the maximum term of imprisonment potentially is ten years or more, a rebuttable presumption arises that

no condition or combination of conditions can be imposed that will reasonably assure the safety of any person or the community and the appearance of Defendant as required to respond to the charges. 18 U.S.C. § 3142(e). For that reason and others, the Government opposes Defendant's release on bond pending trial. Pretrial Services also recommends against releasing Defendant.

3. This is a close call, in the Court's view. The Court, however, has considered all of the arguments made by the Government and by Defendant as well as the recommendation of Pretrial Services. On balance, for the reasons discussed below, the Court finds that Defendant has rebutted the presumption of detention under 18 U.S.C. § 3142(e) and that there are a combination of conditions that can be imposed that will reasonably assure the safety of the community and Defendant's continued appearance in court to respond to the charges he is facing.

4. The Court conducted a detention hearing as required by 18 U.S.C. § 3142(f) on November 22 and 30, 2011. The hearing was recessed on November 22, 2011 to permit Defendant to have present in court his sister and brother-in-law (Maria and Mario Gomez) who have offered to post rental property they own located at 2483 South 10th Street in Milwaukee, Wisconsin ("the 10th Street Property") to secure a bond. The Government also presented some additional evidence at the hearing on November 30, 2011. The Court has considered the evidence and arguments presented at both hearings in its findings contained herein which is consistent with its oral rulings from the bench during the aforementioned hearings.

5. The rebuttable presumption under Section 3142(e) requires Defendant "to come forward with some evidence that if he is released he will not flee or endanger the community." *United States v. Chavez-Rivas*, 536 F. Supp.2d 962, 968 (E.D Wis. 2008). If the Defendant meets this burden of production, the presumption remains in the case as an evidentiary fact weighing against release, but the ultimate burden of persuasion as to danger to the community or risk of flight rests on the Government. *Id.* The Court finds that Defendant has rebutted the presumption by bringing forth at least the following evidence:

(a) Defendant has no family in Mexico, his country of origin. The Government does not dispute that fact. Although Defendant is undocumented in this country, all of his family is here. The woman with whom he has been in a committed relationship for approximately 25 years, his three children with her, his mother, a brother, and his sister and brother-in-law all reside in the Chicago-area or in Milwaukee, Wisconsin. Defendant's adult son from a previous relationship also resides in Milwaukee. Defendant's children and his sister and brother-in-law are United States citizens.

(b) Defendant does not have an extensive or violent criminal record. He was charged in 2006 in Berwyn, Illinois with driving without a license and other traffic-related offenses. The disposition of those charges is not noted in the Pretrial Services Report. Defendant also was arrested in 1993 in El Centro Imperial, California for being in this country illegally, sentenced to 60

days imprisonment and allowed to voluntarily depart the United States. He also was removed from the United States in 1999 at El Paso, Texas on an expedited basis. Defendant's counsel represented, without contradiction by the Government, this incident occurred at or close to the border and Defendant was allowed to depart voluntarily. Although the Court does not make light of the fact that Defendant has entered the country illegally in the past, that evidence also shows that Defendant has long-standing ties to, and a strong desire to live in, the Chicago area. During the last 25 years, Defendant has chosen to live here with his family and not in Mexico even though he has done so on an undocumented basis.

(c) Law enforcement agents seized one kilogram of cocaine from Defendant in May 2011 in connection with the crimes charged in the Indictment. Defendant, however, was not charged at that time. He was not arrested until after he was indicted in November 2011. During the intervening six months, Defendant did not flee and did not commit any other crimes that have been brought to the Court's attention. If law enforcement agents felt that Defendant was a serious threat to the safety of any person or the community, or a serious flight risk, one reasonably can question why he was not taken into custody in May 2011.

(d) Defendant's sister and brother-in-law have offered to post rental property they own in Milwaukee, Wisconsin (the 10th Street Property

referenced earlier) to secure a bond for Defendant. When questioned by the Court on November 30, 2011, under oath, Mr. and Mrs. Gomez said that they bought that property with money they earned over many years and it is not encumbered by a mortgage. For tax purposes, this property is appraised at over $80,000. A recent independent appraisal, however, valued the property at $28,000, less than the Gomezs paid for it. When they received the low appraisal, the Gomezs offered to post the equity in their home as additional security for a bond. But the appraised value of their home was $4,000 less than the amount of the mortgage. The family then raised $7,500 in cash to post as additional security for a bond. When the Court asked the Gomezs on November 30, 2011, under oath, why they are willing to post the 10th Street Property that they bought with their owned hard-earned money, and from which they now receive rental income, Mr. Gomez said he knows that Defendant will not flee and, in particular, he will not go to Mexico because he has no family there.

For these reasons, the Court finds that Defendant has rebutted the presumption under Section 3142(e).

6. The Court has considered available information concerning each of the statutory factors enumerated in 18 U.S.C. § 3142(g) as well as the evidentiary presumption against release that remains even after Defendant has rebutted the presumption under 18 U.S.C. § 3142(e). In conducting this analysis, the Court is

mindful that the standard is whether there are conditions "that will reasonably assure" the appearance of Defendant and the safety of the community. As the Seventh Circuit noted in *United States v. Dominguez*, 783 F.2d 702 (7th Cir. 1986)(Bauer, J.), if the sole criteria were whether there is probable cause to believe that Defendant was involved in serious alleged criminal conduct, "few if any defendants in narcotics cases could ever rebut the presumption of dangerousness and thereby defeat pretrial detention." 783 F.2d at 706. The question is whether Defendant, presumed to be innocent of the charges against him, 18 U.S.C § 3142((j), should be detained or released pending trial subject to certain Court imposed and monitored conditions that will reasonably assure the safety of the community and Defendant's appearance at trial. The Court's analysis of the Section 3142(g) factors that inform this determination is as follows:

>	(a)	<u>Nature and Circumstances of the Offense Charged</u>. Defendant is charged with an offense involving an alleged conspiracy to possess and distribute a narcotic drug. This is a serious crime. According to the Government's proffer, Defendant faces a minimum of five years and a maximum of up to 40 years in prison if he is convicted of all charges.
>
>	(b)	<u>Weight of the Evidence.</u> The Government contends that it has a strong case against Defendant. It says it has audio tape recordings of Defendant offering to sell cocaine. As mentioned above, law enforcement agents reportedly seized one kilogram of cocaine from Defendant in May 2011.

At this early stage of the proceedings, there is at least probable cause to believe a crime was committed and Defendant committed it. Defendant, although presumed innocent as noted above, has not brought forth any countervailing evidence nor he is required to do so at this time.

(c) <u>History and Characteristics of the Defendant.</u> As discussed above, Defendant has long-standing ties to the Chicago area and a number of family members live here or in Milwaukee, Wisconsin. He lives with his girlfriend of 25 years (in a committed relationship akin to marriage), their three children, his mother and his girlfriend's nephew. Defendant also has an adult son from a previous relationship who lives in Wisconsin and with whom he is now in contact. Defendant has no family ties to Mexico, his country of origin. His brother-in-law Mr. Gomez told the Court, under oath, that Defendant has no family left in Mexico, and the Government does not contend otherwise. Although Defendant is not authorized to work in this country, he apparently has been working here as a self-employed laborer to help support his family for at least the last 10 years according to the Pretrial Services Report. Defendant's girlfriend also is employed. Defendant's adult son Ulysses lives with Defendant, is a United States citizen, and works as a manager of a hair salon. He also contributes to the family's living expenses.

Defendant, however, is an undocumented person in this country. Therefore, his continued presence in the United States is against the law. The

Government states that there is an ICE detainer on Defendant and that ICE will take Defendant into custody if he is released on bond by this Court. As noted above, in 1993 and 1999, Defendant was arrested in El Centro Imperial, California and in El Paso, Texas, respectively, and allowed to voluntarily depart from the United States on both occasions. Other than those interactions with law enforcement and the traffic offense in Berwyn, Illinois discussed above, Defendant has had no interactions with law enforcement during the last 25 years.

Defendant has a Mexican driver's license that was issued in 2008 in the name of "Ramon Nevarez-Garcia," an apparent alias. There is no record of Defendant traveling to Mexico in 2008, but the Pretrial Services Report states that Defendant self-reported that he traveled to Mexico on one occasion since he immigrated to this country. Whether or not this self-reported trip was in 2008 is not clear. Moreover, whether and how this self-reported trip takes into account the events that gave rise to the incidents in California and Texas in 1993 and 1999 mentioned above also is not clear. When the Court asked Defendant's counsel why Defendant had a Mexican driver's license, he said he did not know but offered as a possible explanation that perhaps Defendant, who could not legally get a driver's license in this country, felt it was better to have a Mexican driver's license than no license at all. Why the license is not in Defendant's real name, however, is not explained.

The Government contends that Defendant's use of an alias should be held against him as an indication of a lack of trustworthiness and potentially of danger. The Government argues as well that Defendant gave law enforcement his alias instead of his real name when he was arrested after the Indictment was returned, and that he was not truthful when law enforcement officers asked him where he lived, and whether car and house keys in his pocket were his (the Government says Defendant said they belonged to his cousin).

Although the Government now contends he is a flight risk, Defendant was not detained by law enforcement when they seized a kilogram of cocaine from him in May 2011 in connection with an incident that seems to give rise to the charges in the Indictment. Instead, he was released back into the community. He did not flee. He remained here, living with his family and working, for the next six months until he was arrested after he was indicted in November 2011. Defendant argues that if he intended to flee to evade prosecution, he could and would have done so in May or at any time in the intervening six months. The Government counters saying that it may not have been clear to Defendant in May 2011 that he would face criminal prosecution, potential imprisonment and removal from this country. The Government argues that those prospects, only possibilities in May, now have materialized.

According to the Government, because Defendant now is facing certain prison time and/or inevitable removal from this country, he has ample reason to flee if he is released before trial. Defendant responds that, with no family in Mexico, it is much more likely that he will stay here as long as he can stay, to be with his family and face whatever consequences await him, whether he is convicted of the charges or not. The Government also argues that ICE may remove Defendant from the country involuntarily at any time and thus prevent him from being tried on the narcotics charges alleged in the Indictment. With respect to the latter point, however, the Court notes that federal regulations provide a mechanism by which the United States Attorney can, if it desires to do so, request a departure-control order suspending Defendant's possible deportation pending trial in this case. 8 C.F.R. §§ 215.2 and 215.3. If the United States Attorney makes such a request, the Court considers it to be more likely than not that the immigration authorities will accede to it.

Giving weight to Defendant's argument that he has no incentive to leave the country is the fact that Defendant's sister and brother-in-law have offered to post the 10th Street Property to secure his bond. Moreover, Defendant's family raised $7,500 in cash when the appraised value of the properties they offered to post was lower than they expected. The Gomezs understand that they would face the loss of their rental property if Defendant

flees.  Potentially, they also would be personally responsible for any monetary shortfall if the property were seized and could not be sold for the amount of the bond.  Yet, they still are willing to stand up for Defendant and post their property to secure his bond.  They stated under oath that they are doing so of their own volition and not because of any threats or promises that have been made to them.

Defendant's adult son Ulysses also is willing to act as a third-party custodian and to co-sign Defendant's bond**.**  Although Ulysses does not earn a lot of money, he is willing to put himself at financial risk because he also does not think his father will flee.

(d)     <u>Nature and Seriousness of Danger to Any Person or the Community</u>.  The Government does not contend that any particular person would be endangered if Defendant is not detained.  It contends, rather, that the nature of the crime with which Defendant is charged – a narcotics offense – means Defendant is a danger to the community in general and that Defendant's use of an alias in the past also makes him a present danger to the community.  Defendant also tested positive for cocaine when he was arrested, and drug use is an indication that a person may pose a danger to the community.  Defendant's girlfriend and son, however, told Pretrial Services that Defendant does not have any problems with drug or alcohol use, or any history of treatment for abuse.

7. The Government's strongest arguments in terms of flight risk, in addition to the Section 3142(e) evidentiary finding, are that Defendant is a citizen of a foreign country, is undocumented in this country, has a Mexican driver's license, and has used an alias including at the time of his arrest on the charges in the Indictment. In addition, Defendant is charged with a serious drug-related offense and faces a significant amount of time in prison if he is convicted of those charges and potential involuntary removal from this country whatever the outcome of the pending criminal charges. The Court gives less weight to the Government's argument that ICE might remove Defendant from this jurisdiction before his trial because the United States Attorney has the ability to communicate with ICE and address that situation directly. The Court also recognizes the Government's contention that Defendant was not truthful with law enforcement agents when he was arrested after he was indicted, but also views those events in the context of his undocumented status in this country and the inherent stress and uncertainty of that situation. The fact that Defendant tested positive for cocaine when he was processed upon his arrest also is a factor that weighs against him and in favor of the Government's position.

8. Defendant's strongest arguments are that he has strong and long-standing ties to the Chicago area, has lived in a stable family situation here for 25 years, has no significant criminal history other than as related to his undocumented status, and has a sister and brother-in-law who are so convinced that Defendant will

not flee or violate the terms of potential release that they are willing to post valuable property to secure his bond. In addition, Defendant's adult son Ulysses is willing to be his third-party custodian and put himself at financial risk to secure his father's release. Further, although Defendant is undocumented, his conduct over the past 25 years evidences a consistent desire to live in the Chicago area rather than Mexico, where it is undisputed he has no family, as he has returned to this area time and again even after being escorted from the country because of his undocumented status. In addition, the fact that law enforcement did not take Defendant into custody during the six months between May 2011, when they seized from him a kilogram of cocaine, and November 2011, when he was indicted, and that during that time Defendant did not flee nor was he arrested or charged with any other criminal offenses, also are factors that weigh against a finding that Defendant is a flight risk or danger to the community.

9. Balancing all of the evidence presented and considering the Section 3142(g) factors, the Court acknowledges that there is a risk that Defendant, now facing possible imprisonment and removal from this country, might flee to avoid those prospects from materializing. Further, the nature and circumstances of drug cases inherently warrant concern as to the safety of the community. Defendant's possession of a Mexican driver's license and his use of an alias also are concerns though his possession of a Mexican driver's license also is explainable in his situation. In this specific case, however, and with reference to this particular

defendant, the Government has not shown by a preponderance of the evidence that Defendant presents a serious risk of flight or that there are no conditions that can be imposed that reasonably will assure that Defendant will remain here for trial. The Government also has not shown by clear and convincing evidence that Defendant presents a serious danger to any person or to the community at large. Even if the Government had met that burden, however, the Court's view is that there are conditions that can be imposed that reasonably mitigate that risk. Defendant's ties to the community, his lack of a significant criminal history, his decision to remain here after his initial arrest or encounter with law enforcement in May 2011, and the substantial commitments Defendant's family members are willing to make on his behalf outweigh the Government's evidence in this case even considering the Section 3142(e) presumption.

10. Accordingly, in the accompanying Order Setting Conditions of Release, the Court has imposed conditions that it believes reasonably will assure Defendant's appearance as required and the safety of other persons and the community. They include but are not limited to the following particular conditions that address the matters discussed above:

(a) that Defendant's son Uylsses and his sister and brother-in-law Maria and Mario Gomez co-sign a bond in the amount of $35,500 to secure Defendant's continued appearance in these proceedings;

(b) that Mr. and Mrs. Gomez post their rental property located at 2483 South 10th Street in Milwaukee, Wisconsin and appraised at $28,000 to secure Defendant's bond;

(c) that Defendant post $7,500 in cash to secure his bond;

(d) that Ulysses Lechuga and Maria and Mario Gomez each sign the bond papers and agree to be personally responsible for any monetary shortfall in the event the Government executes on that bond and the property securing it is insufficient to satisfy the full amount of the bond;

(e) that Defendant's son Ulysses be appointed as Defendant's third-party custodian;

(f) that Defendant be released to home incarceration for the first 30 days and, at the end of that 30 day period, the Court will re-evaluate whether home incarceration as opposed to home detention is required, with the input of Pretrial Services;

(g) that Defendant submit to drug testing and participate in drug counseling at the discretion and direction of Pretrial Services; and

(h) that Defendant surrender any passport he has in his possession.

11. At the Government's request, the Court stays this Order and the accompanying Order Setting Conditions of Release until 3 p.m. on Monday, December 19, 2011 to allow the Government to appeal these Orders to the District Judge. If the District Judge agrees that Defendant should be released upon the

conditions described herein and in the Order Setting Conditions of Release entered contemporaneously herewith, then Defendant, through his counsel, shall post the cash portion of the bond and shall submit to the District Judge signed documentation necessary to effectuate the posting of the 10th Street property to secure the bond.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 16, 2011